IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CALVIN BURKE, # B-60083, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-cv-345-JPG |
| ) | |
| SALVADOR GODINEZ, ) | |
| RICK HARRINGTON, ) | |
| ASSISTANT WARDEN BUTLER, ) | |
| JOHN TOURVILLE, ) | |
| GEORGE WILLBORN, ) | |
| MICHELLE BUSCHER, MISTI PRICE, ) | |
| BETSY SPILLER, JORGE L. MONTES, ) | |
| ILLINOIS DEPARTMENT of ) | |
| CORRECTIONS, ) | |
| and UNKNOWN PARTIES, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated in the medium security unit at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.

This matter is before the Court on a motion for leave to proceed in forma pauperis ("IFP") brought by Plaintiff (Doc. 3). Plaintiff has also moved for a preliminary injunction and temporary restraining order ("TRO"). Each matter shall be addressed in turn.

**Motion for Leave to Proceed IFP (Doc. 3)**

Plaintiff seeks leave to proceed IFP in this case without prepayment of the Court's usual $350.00 filing fee in a civil case. *See* 28 U.S.C. § 1914(a). Pursuant to 28 U.S.C. § 1915, a federal court may permit a prisoner who is indigent to bring a "suit, action or proceeding, civil or criminal," without prepayment of fees upon presentation of an affidavit stating the prisoner's

assets together with "the nature of the action . . . and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1). In the case of civil actions, a prisoner's affidavit of indigence must be accompanied by "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . . , obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2). Upon tender of a proper affidavit and certified copy of a trust fund account statement, a prisoner then is assessed an initial partial filing fee of twenty percent of the greater of: (1) the average monthly deposits to the prisoner's trust fund account; or (2) the average monthly balance in the prisoner's trust fund account for the six-month period immediately preceding the filing of the prisoner's suit. *See* 28 U.S.C. § 1915(b)(1)(A)-(B). After payment of an initial partial filing fee, a prisoner is required to make monthly payments of twenty percent of the preceding month's income credited to the prisoner's trust fund account. *See* 28 U.S.C. § 1915(b)(2). The agency having custody of a prisoner must forward payments from the prisoner's trust fund account to the clerk of the district court where the prisoner's case is pending each time the amount in the account exceeds $10.00 until the filing fee in the case is paid. *See id*. Importantly, a prisoner incurs the obligation to pay the filing fee for a lawsuit when the lawsuit is filed, and the obligation continues regardless of later developments in the lawsuit, such as denial of leave to proceed IFP or dismissal of the suit. *See* 28 U.S.C. § 1915(b)(1), (e)(2); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998); *In re Tyler*, 110 F.3d 528, 529-30 (8th Cir. 1997).

   In this case, Plaintiff has tendered an affidavit of indigence that is sufficient as to form, but this is not the end of the matter. Pursuant to 28 U.S.C. § 1915A, a district court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a

complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The statute provides further that, "[o]n review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]" 28 U.S.C. § 1915A(b)(1). Under 28 U.S.C. § 1915,

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Court documents are, of course, public records of which the Court can take judicial notice. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). Review of documents filed in the electronic docket of this Court, and on the Public Access to Court Electronic Records ("PACER") website (www.pacer.gov), discloses the following actions brought by Plaintiff while a prisoner seeking redress from officers or employees of a governmental entity that have been dismissed pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted: *Burke v. Snyder, et al.*, Case No. 03-cv-3024-HAB-BGC (C.D. Ill., dismissed July 20, 2004); *Burke v. Montgomery Cnty. Jail*, Case No. 12-cv-253 (M.D. Tenn., dismissed March 13, 2012); *Burke v. Montgomery Cnty. Jail*, Case No. 12-cv-293 (M.D. Tenn., dismissed March 28, 2012).[1] Because Plaintiff has three "strikes" for purposes of § 1915(g), he may not proceed IFP in this case unless he is under imminent danger of serious physical injury.

Notably, Plaintiff neglected to mention any of these previously-filed actions in his

---

[1] *See Burke v. Tackett*, Case No. 12-cv-374 (M.D. Tenn., filed April 11, 2012), in which Plaintiff's application to proceed IFP was denied, and where Plaintiff was ordered on January 8, 2013, to pay the filing fee in full or face dismissal of that suit.

complaint. A plaintiff's failure to disclose his litigation history, particularly when he seeks to proceed IFP, may be grounds for immediate dismissal of the suit. *Ammons v. Gerlinger*, 547 F.3d 724, 725 (7th Cir. 2008) (termination of the suit is an appropriate sanction for struck-out prisoner who took advantage of court's oversight and was granted leave to proceed IFP); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999) (litigant who sought and obtained leave to proceed IFP without disclosing his three-strike status committed a fraud upon the court); *see also Hoskins v. Dart*, 633 F.3d 541, 543 (7th Cir. 2011) (dismissal appropriate where Court-issued complaint form clearly warned Plaintiff that failure to provide litigation history would result in dismissal). At this juncture, the record does not clearly indicate that dismissal is appropriate. However, Plaintiff is **ADVISED** that if he brings any future lawsuit while he is a prisoner, he must inform the Court of his prior cases which have been dismissed pursuant to § 1915A, whether or not he uses a Court-issued complaint form. Further, Plaintiff must still satisfy the requirements of § 1915(g) if he is to proceed in this action.

The United States Court of Appeals for the Seventh Circuit has explained that "imminent danger" within the meaning of 28 U.S.C. § 1915(g) requires a "real and proximate" threat of serious physical injury to a prisoner. *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) (citing *Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002)). In general, courts "deny leave to proceed IFP when a prisoner's claims of imminent danger are conclusory or ridiculous." *Id*. at 331 (citing *Heimermann v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003)). Additionally, "[a]llegations of past harm do not suffice" to show imminent danger; rather, "the harm must be imminent or occurring at the time the complaint is filed," and when prisoners "allege only a past injury that has not recurred, courts deny them leave to proceed IFP." *Id*. at 330 (citing *Abdul-Wadood v. Nathan*, 91 F.3d 1023 (7th Cir. 1996)).

In this case, Plaintiff's first claim alleges he was denied due process by the Prisoner Review Board, which delayed action on his case for over seven months (Doc. 1, pp. 7-13; Doc. 2, pp. 2-6). Plaintiff admits to having committed several offenses in Tennessee, beginning in December 2011. However, Illinois officials did not revoke his parole until August 2012, when he was returned to custody in Illinois. He is seeking damages for this delay and the resulting additional incarceration (Doc. 1, pp. 23, 26-27). Clearly, this claim does not include any suggestion of physical danger, imminent or otherwise.

The complaint then alleges that Plaintiff received verbal threats from two Menard correctional officers, which have caused him to fear that he is in danger of physical harm or death. On February 8, 2013, Plaintiff was on a work detail in the maximum security area of Menard, which had been recently placed on lockdown. Defendant Tourville thought Plaintiff was staring at him, so he told Plaintiff, "If you f\*\*ing hit me I will kill you," then insisted Plaintiff repeat back to him, "Yes, I understand you will f\*\*ing kill me" (Doc. 1, p. 15-16; Doc. 2, pp. 9-13; 18-19). He does not describe any further encounters with Defendant Tourville. He filed an emergency grievance over this encounter, which was deemed not to be an emergency by Defendant Warden Harrington (Doc. 1, p. 17).

On March 26, 2013, Defendant Willborn told Plaintiff, "Snitches get stitches" (Doc. 1, p. 14-15; Doc. 2, p. 8). Plaintiff took this as a threat of physical harm. Prior to this exchange, Plaintiff had filed a grievance accusing Defendant Willborn of giving tobacco (which is contraband) to inmate porters. *Id*. Another prisoner told Plaintiff he had heard two other inmates talking about Plaintiff's indirect accusation against the porters (Doc. 2, p. 8).

Finally, Plaintiff complains that as a result of other grievances he filed over his "false imprisonment" and other prison conditions (Doc. 1, p. 19), he was given a "corrected [sentence]

calculation sheet" on March 7, 2013, that showed his projected release date as July 22, 2013 (Doc. 1, p. 21; Doc. 2, pp. 15, 27, 29). This added almost two months to his prison time, as he had been previously told he would be released on May 29, 2013. He concludes that this action was taken in retaliation for his protected activity of filing grievances and acting as a "jailhouse lawyer" (Doc. 2, pp. 23, 34). Again, this claim does not suggest that Plaintiff is in any physical danger as a result of the alleged retaliation.

Plaintiff acknowledges that the threats by Defendant Tourville and Defendant Willborn, and what he describes as his "false imprisonment" are "all unrelated incidents" (Doc. 1, p. 19). However, he claims that each incident is connected because they led to the ultimate retaliation of his sentence being recalculated to extend his imprisonment. *Id*.

Because Plaintiff's pleadings do not include or acknowledge the fact that he faces the "three-strike" bar to proceeding IFP in this action, he does not squarely address the question of whether he is under imminent danger of serious physical injury within the meaning of § 1915(g). In his request for injunctive relief, he asks for an order prohibiting Defendants from making any further verbal threats against him or from carrying out threats to kill or harm him (Doc. 2, p. 33). At the same time, he seeks to enjoin further retaliation against him for complaining about prison conditions, as well as to prevent the disclosure of the contents of his grievances to the offending prison staff members, and prevent any further increase in his sentence without written justification (Doc. 2, pp. 33-34).

Taken as a whole, the Court is of the opinion that Plaintiff's pleadings do not show that he is facing imminent danger of serious physical injury. He does not claim that any Defendant has ever physically harmed him or even had physical contact with him. The verbal threat from Defendant Tourville occurred on February 8, 2013, and has not recurred. The disclosure of

Plaintiff's grievance against Defendant Willborn and the "snitch" comment were more recent, but Plaintiff does not indicate that he has experienced any harm, threat of harm, or attempted attack from any fellow inmate (or from Defendant Willborn) after this encounter. The verbal threats from Defendants Tourville and Willborn were merely talk, unaccompanied by any other indicia of violence directed toward Plaintiff. This type of verbal harassment will not support an Eighth Amendment claim, nor does it indicate a threat of imminent serious physical danger. *Compare Dobbey v. Ill. Dept. of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009) (brief display of noose by white guard during a card game in officers' control room, in view of African-American plaintiff, was not a credible threat to kill or injure plaintiff), *with Irving v. Dormire*, 519 F.3d 442, 445, 449-50 (8th Cir. 2008) (pattern of conduct by defendant including allowing another inmate to attack plaintiff, offering to pay other inmates to beat him, providing a weapon to an inmate to use against plaintiff, and labeling plaintiff a "snitch," coupled with repeated verbal death threats, stated a claim). The threats described by Plaintiff do not come close to the pattern of conduct in *Irving*. At most, they may be comparable to the incident in *Dobbey*, which was found not to be a credible death threat.

     Plaintiff's pleadings indicate a greater level of concern on his part about the chilling effect the alleged retaliation has had on his First Amendment activity, and about the process which resulted in the revocation of his parole in the first place. It appears he is attempting to "piggy-back" these claims, which standing alone indicate no danger to him whatsoever, onto his claim that he is in danger of physical harm as a result of verbal threats, in order to get past the three-strike bar. This connection is too tenuous to hold, and the allegations of physical danger do not suffice to overcome the restrictions of § 1915(g).

     The Court concludes that Plaintiff has not shown that he is under imminent danger of

serious physical injury so as to escape the "three-strikes" rule of § 1915(g), thus he is not entitled to proceed IFP in this action. Therefore, it is hereby **ORDERED** that Plaintiff's motion for leave to proceed IFP in this case (Doc. 3) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff shall pay the full filing fee of $350.00 for this action within **twenty-one (21) days** of the date of entry of this Order (**on or before May 30, 2013**). If Plaintiff fails to comply with this Order in the time allotted by the Court, this case will be dismissed. *See* FED. R. CIV. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051, 1056-57 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466, 468 (7th Cir. 1994).

**Motion for Preliminary Injunction and TRO (Doc. 2)**

Because Plaintiff's allegations, discussed above, do not indicate that he is facing imminent danger, they likewise do not establish a need for the entry of a TRO before the Defendants can be heard.[2] Plaintiff's other requests for injunctive relief (those that are not related to the verbal threats) go to the ultimate issues of whether Plaintiff has been denied his right to due process or been subjected to unconstitutional retaliation. They do not warrant immediate action by the Court. Moreover, in order for Plaintiff to proceed on any of his claims, he must comply with the order herein for prepayment of his filing fee. Accordingly, Plaintiff's motion for injunctive relief (Doc. 2) shall be **HELD IN ABEYANCE** pending his prepayment of the filing fee. If the fee is paid, the Court shall proceed to screen the complaint pursuant to 28 U.S.C. § 1915A. Plaintiff is advised that some of the claims in his complaint may not survive this threshold merits review.

---

[2] A TRO is an order issued without notice to the party to be enjoined that may last no more than 14 days. FED. R. CIV. P. 65(b)(2). A TRO may issue without notice *only* if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. FED. R. CIV. P. 65(b)(1).

Finally, Plaintiff is **FURTHER ADVISED** that he is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his address, and that the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents, and may result in dismissal of this action for want of prosecution.

**IT IS SO ORDERED.**

**DATED:  May 9, 2013**

s/ J. PHIL GILBERT
United States District Judge